472 So.2d 595 (1985)
Kathryn B. PAGE
v.
Betty M. MADERE Registrar of Voters et al.
No. 85-CA-296.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 1985.
Paul S. West, Roy, Kiesel, Aaron & West, Baton Rouge, for plaintiff-appellee.
Louis L. Robein, Jr., Gardner, Robein & Healey, Metairie, for defendants-appellants.
Before BOWES, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This appeal originates in the Fortieth Judicial District Court, Division "A", Parish of St. John the Baptist, wherein the Honorable G. Walton Caire rendered judgment declaring the petition seeking the recall of Kathryn B. Page an elected official of St. John the Baptist Parish School Board, to be illegal and that the results of a vote on that recall were not to be extracted or made public and are to be erased should his judgment be upheld. We affirm.
In September, 1984, a notice of recall was filed by Donna Laurent, Robbie W. Tomeny, Harris Butler and Ronnie Byrd seeking the recall of Kathryn B. Page. Petitioners filed their initial petition with then registrar of voters, St. John the Baptist Parish, Melvin J. Pedeaux. By letter dated October 10, 1984, Mr. Pedeaux informed petitioners that the total number of electors in Kathryn Page's school board district was one thousand nine hundred sixty-nine (1,969).
On January 1, 1985, Betty T. Madere became the registrar of voters in St. John the Baptist Parish. She received the recall petition on February 8, 1985, and certified *596 seven hundred eighty-six (786) names. However, after careful tabulation, Madere concluded that the total number of electors in Kathryn Page's school board district was two thousand seven hundred forty-six (2,746)not 1,969 as previously stated by Mr. Pedeaux.
Under the figure given by Mr. Pedeaux, the 786 certified names were sufficient to satisfy the 33 1/3 percent requirement of LSA-R.S. 18:1300.2(B)[1]. However, under the revised figure tabulated by Madere, the 786 certified names were insufficient to satisfy the recall requirements.
Madere, on February 15, 1985, forwarded the results of the recall drive to Governor Edwin W. Edwards together with a cover letter explaining that the number of electors in Kathryn Page's school board district was greater than 1,969. However, Madere made the decision to use Pedeaux's figure of 1,969 and certified the recall petition whereupon Governor Edwards issued a proclamation ordering an election to be held on May 4, 1985 for the purpose of voting on the question of the recall of Kathryn Page.
On May 3, 1985, Kathryn Page filed a motion for temporary restraining order and preliminary injunction. Page brought her action pursuant to LSA-R.S. 18:1300.17[2] seeking injunctive relief aimed at permanently enjoining the holding of any recall election based on the recall petition certified by Madere. Page's motion asserted:
"The election scheduled for May 4, 1985, has not been properly called inasmuch as the proclamation of this election by defendant, Edwin W. Edwards, was based on improper and erroneous information in that the certification by Betty T. Madere did not contain the total number of electors as of the date of the execution of the certificate and that if it had the correct number would have been 2,746 which would have resulted in the Petition to Recall not containing a sufficient number of signatures to meet the requirements of LSA-R.S. 18:1300.2(b)."
At 12:05 p.m. on May 3, 1985, a temporary restraining order was issued enjoining the named defendants from performing their duties in connection with Kathryn Page's recall election.[3] It was further ordered that on May 10, 1985, a hearing was to be held affording defendants an opportunity to show cause why a preliminary writ *597 of injunction should not issue. Certain defendants sought relief in this court through supervisory writs.
This court granted the writ in part, lifting the restrictions preventing the election, specifically Items A, D and E; and denied in part, allowing the restrictions preventing the extraction and certification of the results. Kathryn B. Page v. Betty M. Madere, Registrar of Voters et al, 85-C-277. We allowed the election to go forth stating, "Because of the paucity of convincing evidence of the correct number of voters in the district presented in the current writ application and the conflict as to the correct number ... we refuse to cancel as important a public process as an election at this late date."
The temporary restraining order was not directed to the election commissioners and did not restrain them from performing their duties. Because the election commissioners are specifically charged with extracting and tabulating both official and unofficial election results and were not specifically named in the temporary restraining order, much confusion arose as to whether they could perform their duties as directed by LSA-R.S. 18:571 et seq. In order to determine whether the temporary restraining order applied to the commissioners as well, Harold Montegut, Clerk of Court, St. John the Baptist Parish, sought a clarification from the trial judge who indicated that the order restrained everyone involved from extracting and tabulating the results.
Shortly after the election, appellants served Harold Montegut with a subpoena duces tecum ordering him to produce the unofficial tabulations at the May 10 injunction hearing.[4]
By telephone conference between the trial judge and all counsel of record,[5] the trial judge was requested to sign a written order reflecting the oral order issued to the clerk of court or to issue a written clarification of his order which was modified by this court. After initially declining to respond to such request, the trial judge, on May 9, 1985 issued a written order of clarification.
This clarifying order stated with specificity that Harold Montegut, Jr., Clerk of Court, and any election commissioner involved with the May 4 recall election was restrained from extracting and making any tabulation, official or otherwise. Accordingly, compelled by the clarified temporary restraining order, Montegut did not produce the tabulation sought by defendants.
On May 10, 1985, a trial on the merits of the permanent injunction was held and the evidence adduced showed that the initial calculation by Mr. Pedeaux of the number of electors in Kathryn Page's district was erroneous. The trial judge rendered judgment declaring that: (1) the petition seeking the recall of Kathryn B. Page is illegal in that it failed to contain the required number of signatures of qualified voters, thus failing to meet the requirements of LSA-R.S. 18:1300.2(B); and that (2) the results of the May 4, 1985 recall election of Kathryn B. Page are not to be extracted or made public, pending further adjudication of this matter and are to be erased from the voting machines should the judgment be upheld by the appellate court. From this judgment defendants have appealed.
Appellants base all of their assignments of error on the assumption that this matter involves an election contest and is therefore governed by LSA-R.S. 18:1401 et seq. Appellee asserts that the instant action, notwithstanding the fact that the election has been held, is not an election contest under LSA-R.S. 18:1401, but instead is governed by LSA-R.S. 18:1300.17. Appellee argues, "appellants seem to have forgotten that this case appears before this court on an injunction against holding the election and promulgating the results."
*598 Any public officer whose recall is sought has the right to contest the recall or any proceeding relating thereto based on fraud or other illegality. LSA-R.S. 18:1300.17. Prior to the recall election, appellee sought injunctive relief asserting that the election was illegally called in that the proclamation was issued on a petition that did not contain a sufficient number of signatures pursuant to LSA-R.S. 18:1300.2(B). This clearly constitutes a pre-election problem, as envisioned by § 1300.17, which questions the right of the election to be called.
Appellants do assert, however, that appellee's challenge was not timely. Although filed on the day prior to the election, appellee's petition was timely and was never a bad faith effort on her part aimed at frustrating her recall.
It is evident from the record that Betty Madere knew about the discrepancy in the total number of electors for appellee's school board district as early as February 15, 1985. She testified, however, that the new higher total was not made public until April 15, 1985 when Mr. Bonura discovered the same from her office.
On April 19, 1985, appellee propounded interrogatories to Betty Madere inquiring what was the correct total number and whether the seven hundred eighty-six (786) certified names on the recall petition were less than 33 1/3 percent of that total. Madere did not answer until May 2, 1985. Based upon those answers, appellee filed her petition for injunctive relief the following day, May 3, 1985.
It is uncontrovertible that the number of electors in Kathryn B. Page's district at the time of certification, February 15, 1985, was two thousand seven hundred forty-six (2,746). At the hearing on the permanent injunction, Mr. Pedeaux testified that his calculations were erroneous and that he had simply made a mistake. At the time the recall petition was presented to Betty Madere for certification, it is equally clear that the 786 names certified by her failed to constitute 33 1/3 percent of the total number of electors in Kathryn B. Page's school board district as required by LSA-R.S. 18:1300.2(B).
Accordingly, for the above stated reasons, we find all errors alleged by appellants to be irrelevant as this matter is not a post-election challenge; and therefore affirm the judgment based on appellee's timely pre-election challenge to the right to hold such election based on an illegally insufficient recall petition. Appellants are to pay all costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 18:1300.2(B) provides:

This petition shall be signed by a number of the electors of the voting area as will in number equal not less than thirty-three and one-third percent of the number of the total electors of the voting area wherein and for which a recall election is petitioned; however, where fewer than one thousand qualified electors reside within the voting area, the petition shall be signed by not less than forty percent of said electors.
[2] LSA-R.S. 18:1300.17; Right to contest preserved

Nothing contained in this Chapter shall be construed to deny to any public officer recalled, or whose recall is sought, the right to contest the recall, or any proceedings in relation thereto, in any court of competent jurisdiction, for fraud or other illegality.
[3] The temporary restraining order provided in pertinent part:

"A. Betty T. Madere, Registrar of Voters, St. John the Baptist Parish, be and is hereby restrained from conducting absentee voting in connection with the May 4, 1985, recall election of Kathryn B. Page.
B. Harold L. Montegut, Jr., Clerk of Court, St. John the Baptist Parish, be and is hereby restrained from extracting election results and conveying the same to the Parish Board of Election Supervisors in connection with the May 4, 1985, recall election of Kathryn B. Page.
C. The St. John the Baptist Parish Board of Election Supervisors be and is hereby restrained from certifying any election results to the Secretary of State in connection with the May 4, 1985, recall election of Kathryn B. Page.
D. Jerry M. Fowler, Commissioner of Elections, be and is hereby restrained from placing ballots upon voting machines and transporting the same to local voting places in connection with the May 4, 1985, recall election of Kathryn B. Page.
E. James H. "Jim" Brown, Secretary of State, be and is hereby restrained from printing ballots and certifying election results in connection with the May 4, 1985, recall election of Kathryn B. Page.
F. Edwin W. Edwards, Governor, State of Louisiana, be and is hereby restrained from declaring the office which Kathryn B. Page now holds vacant in connection with the May 4, 1985, recall election of Kathryn B. Page."
[4] The pertinent voting machines had remained sealed and in the custody of the clerk of court during the pendency of the restraining order.
[5] The trial judge also notified all counsel of record that, at the hearing scheduled for the preliminary injunction, he would conduct a trial on the merits of a permanent injunction.